IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                      Criminal No. 3:18CR129

KEVIN TURNER

**MEMORANDUM OPINION**

Kevin Turner, a federal inmate proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion," ECF No. 51).  Turner raises the following claims for relief:

Claim One:    "Ineffective    Assistance/Actual    Innocence under Amendment 801.  Counsel failed to inform me that under Amendment 801 I had to know my files were available to others to be guilty of distribution."  (Id. at 4.)[1]

Claim Two:    Counsel failed to move for a hearing under Franks v. Delaware, 438 U.S. 154 (1978) in light of the false statements and omissions in the search warrant affidavit.  (Id. at 5.)

Claim Three:  "Counsel failed to file a motion to suppress my statements to the agents.  I informed an agent that I needed to go to work and I was told I could not leave until my electronics were checked over first. . . .  Without my statements of being responsible for the download, I would not have pled guilty and would have gone to trial."  (Id. at 7.)

Claim Four    "Counsel failed to inform me that I was not indicted or even what an indictment was."  (Id. at 8.)

---

[1]  The Court uses the pagination assigned to Turner's submissions by the CM/ECF docketing system.  The Court corrects the spelling, punctuation, and spacing in quotations from Turner's submissions.

For the reasons set forth below, Turner's § 2255 Motion (ECF No. 51) will be denied.

## I.   PROCEDURAL HISTORY

On October 29, 2018, Turner was charged in a one-count criminal information with knowingly distributing child pornography. (ECF No. 1, at 1.) On November 14, 2018, Turner entered into a Plea Agreement and pled guilty to the Criminal Information. (Plea Agreement ¶ 1, ECF No. 13.) In the Statement of Facts supporting the Plea Agreement, Turner agreed that the factual allegations contained in this Statement of Facts "are true, and had this matter proceeded to trial the United States could have proven them beyond a reasonable doubt." (Statement of Facts 1, ECF No. 14.) Accordingly, Turner agreed that:

> 1.   At all relevant times during the course of conduct described in this Statement of Facts, the defendant, KEVIN TURNER, resided in Richmond, Virginia, which is located in the Eastern District of Virginia.
> 2.   On April 8, 2017, a detective with the City of Lynchburg Police Department, in Lynchburg, Virginia, working in an undercover capacity, detected a user operating over a peer-to-peer network on the Internet utilizing Internet Protocol ("IP",) address 98.117.67.187. The user had made available 1,099 images of apparent child pornography for downloading. The detective subsequently made a complete download from the user of all 1,099 images, which depicted minors engaged in sexually explicit conduct.
> 3.   Specifically, one image entitled "lsm-001_019.jpg," depicts two prepubescent females, approximately 8-10 years old, lying on their backs on a bed with their legs spread open, fully exposing their

2

vaginas to the camera.  The foregoing image serves as the basis for Count One of the Criminal Information filed in this matter.

4.   Records held by Verizon showed that IP address 98.117.67.187 was assigned, during the above timeframe, to the residence located at 1735 Almond Creek North Terrace, Richmond, Virginia, 23231.

5.   Agents   with   the   Federal   Bureau   of Investigation, Richmond Field Office executed a search warrant at the aforementioned residence on September 26, 2017.   During   execution   of   the   warrant,   agents encountered the defendant KEVIN TURNER, who resided at the address.  During a subsequent interview with agents, TURNER admitted downloading child pornography to a peer-to-peer network.

6.   As part of the search, agents seized a Dell Laptop Latitude E6420, and a HGST 2.5″ Internal Hard Drive,   500   GB,   S/N   150916RB250AlC3NRNHJ,   from   the defendant's bedroom.

[7]. A subsequent forensic examination of the above computer   and   internal   hard   drive   revealed   that   the defendant had downloaded and saved thousands of images and   videos   of   minors   engaged   in   sexually   explicit conduct as defined in 18 U.S.C. § 2256(2)(A).

[8]. As part of his guilty plea, the defendant acknowledges   that   he   committed   the   above   conduct knowingly and intentionally, not by accident or mistake, and that he knew his conduct was illegal at the time.

(Id. ¶¶ 1-8.)  As part of the Plea Agreement, the Government agreed to recommend that the Court sentence Turner to the mandatory minimum sentence of sixty (60) months.  (Plea Agreement ¶ 4.)

On February 8, 2019, the Court entered judgment against Turner and sentenced him to sixty (60) months of imprisonment. (ECF No. 36, at 2.)  Turner did not appeal.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted

4

on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Any assertion by Turner that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. See id. at 369-70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

### A. Claim One

In Claim One, Turner asserts,

> Counsel failed to inform me that under Amendment 801 I had to know my files were available to others to be guilty of distribution. My mother and I ha[d] told counsel many times that I did not know. . . . Counsel stated my files being made available and someone retrieving them made me guilty even if I did not know.

> Had counsel informed [me] of Amendment 801 I would not have pled guilty and would have gone to trial.

(ECF No. 51, at 4.)[2]

It is true that "[k]nowingly placing or leaving files in a shared folder connected to a peer-to-peer network undoubtedly constitutes distribution under 18 U.S.C. § 2252(a)(2)." United States v. Carroll, 886 F.3d 1347, 1353 (11th Cir. 2018). "But the fact that files were automatically shared from [a defendant's] folder, without some evidence of his awareness of it, cannot carry the government's burden to prove knowing distribution beyond a reasonable doubt." Id. at 1353-54.

Turner contends that he did not know the computer program/network he was using, "Bittorent," shared the images of

---

[2] As the Government correctly notes,

> The "Amendment 801" the defendant refers to is actually an amendment to the child pornography sentencing guidelines promulgated by the United States Sentencing Commission in 2016, not an amendment to the statute under which the defendant was convicted, 18 U.S.C. § 2252A(a)(2)(a). See United States Sentencing Guidelines, Section 2G2.1, Amendment 801, November 16, 2016). . . .
> The defendant's statute of conviction, § 2252A(a)(2)(A), of course has always contained the knowledge element as part of its mens rea (i.e., that the offender must have knowingly distributed child pornography), which is reflected in the filed Criminal Information.

(ECF No. 62, at 6-7 (citation omitted).)

child pornography he had downloaded with others. (ECF No. 52, at 1.) Turner asserts that "Petitioner and his mother . . . told counsel many times that Petitioner had no knowledge of Bittorent's sharing abilities." (Id.) According to Turner, counsel simply responded, "Petitioner's files being shared and received by others made him guilty of distribution." (Id.) In support of this contention, Turner submits an e-mail exchange between his mother and his attorney, Atchuthan Sriskandarajah, on August 30 and 31, 2018. (ECF No. 51-1, at 2-4.) Ms. Turner wrote:

> I still do not understand how the prosecutor can charge
> him with distribution, when there is clear evidence that
> Kevin did not intentionally or even knowingly distribute
> anything. To have a charge on someone that is baseless
> seems really unfair.

(Id. at 2.) Counsel did not answer Ms. Turner's question with respect to knowledge. Instead, counsel provided the following, unhelpful response: "Making it available for distribution and having someone retrieve it from his computer meets the criteria for distribution." (ECF No. 62-1, at 6.) Turner contends that had counsel "informed Petitioner that he would have to know his files were being shared with others to be guilty, Petitioner would not have pleaded guilty and would have awaited an Indictment and gone to trial." (ECF No. 52, at 1-2.)

In response, counsel submitted an affidavit, wherein states as follows:

Mr. Turner has alleged that under Amendment 801, I had failed to inform him about his having to know that his files were available to others to be guilty of distribution. Further, he has also alleged that I had stated to him that his files being made available and someone reviewing them made him guilty even if he did not know. He is wrong in making such an allegation.

Mr. Turner and his family had several opinions as to how a child pornography distribution case would proceed and they constantly provided their ideas of defense and persistently requested me to pursue such defense strategies which, in my opinion, and based on my strategy, would not be successful in court. One such opinion was the idea of stating that Mr. Turner did not have knowledge of distribution. I would like to quote the exact words I had used in the email I had sent to Mr. Turner's mother, see attached Attachment A, about knowledge being an important element to be proved in a child pornography distribution offense. In the email dated, August 31, 2018, I had stated as follows "Making it available for distribution and having someone retrieve it from his computer meets the criteria of distribution." Given the fact that Mr. Turner had made use of the BitTorrent software to download the child pornography images and had admitted to using BitTorrent software for the last three years, my experience in handling child pornography distribution cases lead to my belief that a defense based on the absence of knowledge would not likely get a positive outcome. There have been a number of cases where the Federal Courts have refused to accept a similarly placed Defendant's claim that he was not aware of the distribution. I knew well that the courts based their decision on the grounds that the BitTorrent user agreement clearly indicated that all images downloaded will be shared with other users and the messages provided to users as part of the BitTorrent software's user interface and design indicate the Peer-to-Peer sharing option. As a lawyer experienced in such matters, I knew how the courts proceed in such matters but due to the difficulty involved in communicating the legal complications involved, I tried to explain it in layman's terms for Mr. Turner and his mother via email as noted above.

(ECF No. 62-1, at 1-2.)

8

Counsel's affidavit does little to dispel Turner's contention that counsel persuaded him that he could be found guilty of distribution of child pornography even if Turner did not know the files were being shared from his computer.  In fact, counsel's reliance on his unhelpful e-mail response of August 31, 2018 bolsters Turner's contention that counsel led Turner to believe that his purported ignorance that his files were being shared was irrelevant to the charge of distribution of child pornography. Moreover, although counsel believed that "a defense based on the absence of knowledge would not likely get a positive outcome," he has not demonstrated that he had discussions to that effect with Turner.  (Id. at 2.)

The Government correctly notes that, in the Statement of Facts, Turner admitted that his distribution of child pornography was done "knowingly and intentionally, not by accident or mistake." (ECF No. 14, at 2.)  But, the evidence before the Court plausibly indicates that Turner was led to believe that:  (a) that language was surplusage; and (b) that the presence of child pornography on his computer and retrieved by others completed the offense of distribution of child pornography.  The record fails to demonstrate that counsel performed reasonably with respect to informing Turner of the necessary elements of distribution of child pornography.

See 28 U.S.C. § 2255(b) (stating that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto").  And, with respect to the issue of prejudice, the Government has not shown that the evidence of Turner's guilt was so overwhelming that no reasonable defendant would have pled guilty.  Nor has the Government established that the sentencing benefit that Turner received from the agreement was so significant that any reasonable defendant in Turner's position would have pled guilty. Meyer, 506 F.3d at 369-70; see United States v. Robertson, 219 F. App'x 286, 286 (4th Cir. 2007) (citations omitted) (noting that an evidentiary hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve the issue").  Accordingly, an evidentiary hearing is necessary before Claim One can be resolved.

**B.   Claim Two**

In Claim Two, Turner faults counsel for failing to move for a Franks hearing in light of allegedly false statements and omissions about Turner's father, Brian Thomas, in the search

10

warrant affidavit for Turner's residence.[3]   (ECF No. 52, at 4.)
Specifically, the affidavit in support of the search warrant stated
that Brian Thomas lived at the residence and had

> a prior conviction for rape in 1991, a 2006 conviction
> for failure to register as a sex offender, <u>a 2006 charge
> of trying to exchange sexual favors while he was working
> as a loss prevention officer at a local pharmacy, and
> police report from 2011 indicating he approached three
> different juveniles offering them money to make
> pornography.</u>

(ECF No. 51-4, at 2 (emphasis added).)

Turner submitted from Brian Thomas a letter reciting that the
2006 charge "was floated as a vindictive smear by two repeat
shoplifters/prostitutes that I apprehended in my duties as a loss
prevention officer.  The accusation was without merit and no action
was taken."  (<u>Id.</u> at 3.)  Thomas further said that the 2011 police
report resulted from "a vindictive teenager being asked to leave

---

[3] The United States Court of appeals for the Fourth Circuit
explained that:

> A <u>Franks</u> hearing provides a criminal defendant with a
> narrow way to attack the validity of an affidavit. But
> to obtain the hearing, a defendant must make a
> "substantial preliminary showing" that (1) law
> enforcement made "a false statement"; (2) the false
> statement was made "knowingly and intentionally, or with
> reckless disregard for the truth"; and (3) the false
> statement was "necessary to the finding of probable
> cause."

<u>United States v. Moody</u>, 931 F.3d 366, 370 (4th Cir. 2019) (quoting
<u>United States v. White</u>, 850 F.3d 667, 673 (4th Cir. 2017)).

my place of business. The matter was addressed with me by Henrico Police Dept. and again found to be baseless . . . ." (Id.) Turner contends that the Government improperly omitted the above information in order to obtain probable cause to search the residence in question. As explained below, counsel cannot be faulted for failing to pursue a Franks hearing on the grounds urged here by Turner.

Specifically, counsel states that he met with Turner and

explained to him that the probable cause for the search did not arise from the mentioning of the statements about his father Brian Thomas in the affidavit. I advised him that the probable cause for the search was indicated in Paragraphs 11 and 12 of the affidavit. These paragraphs indicate that on April 8, 2017, the concerned undercover officer connected to the IP address registered in Avis Thomas as the customer name and successfully downloaded a torrent containing 1099 files in which the device at the said IP address was made available. In June 2017, the Richmond Division of the FBI received a referral from the undercover law enforcement officer who was utilizing peer to peer file sharing on the BitTorrent network over the internet. The said undercover officer states that he had detected a device at a particular address which was sharing a torrent file. I explained the crux of the above-mentioned statements and told him that probable cause did not arise from Paragraph 17 and in fact Paragraphs 11 and 12 mention the events that lead to probable cause for the issuance of the search warrant.

(ECF No. 62-1, at 3.) Paragraph 12 of the affidavit in support of the search warrant describes two of images of child pornography in the torrent containing 1099 files. (ECF No. 62-3 ¶ 12.) Given that there was ample probable cause to justify the search and that

the omissions mentioned by Turner were irrelevant to the viability of the search warrant, counsel reasonably eschewed moving for a Franks hearing.  See Moody, 931 F.3d at 371 ("A district court may not hold a Franks hearing where, after stripping away the allegedly false statements, the truthful portions of the warrant application would still support probable cause.").  Additionally, Turner has not demonstrated that he was prejudiced by counsel's decision not to move for a Franks hearing.  Claim Two will be dismissed.

### C.    Claim Three

In Claim Three, Turner complains that "[c]ounsel failed to file a motion to suppress my statements to the agents.  I informed an agent that I needed to go to work and I was told I could not leave until my electronics were checked over first. . . .  Without my statements of being responsible for the download, I would not have pled guilty and would have gone to trial."  (ECF No. 51, at 7.)  Turner, however, has not identified any inculpatory statement that he made after he was told that he was not free to leave.  Instead, Turner points only to inculpatory statements that were made before he was told he was not free to leave.  Specifically, Turner contends:

> The defendant's father was being interviewed outside of
> the home when the defendant asked if he could leave to
> go to work.  Since the defendant was not under arrest,
> he should not have been denied leaving when requested,
> and was made to feel he didn't have the right to leave

13

> due to his request been denied leaving by FBI agents.
> <u>Before the interview</u>, the agents showed the defendant
> non-nude images they claimed came from a computer at his
> residence.  The defendant was asked if he recognized the
> images, to which the defendant stated he did.  The agents
> at that point told the defendant that all images of that
> nature on the computer constituted child pornography and
> asked if he was aware of that.  The defendant thinking
> about the images he had downloaded and then deleted
> after seeing that those images were indeed illegal,
> stated yes.

(ECF No. 87, at 4 (emphasis added).)  Turner has not directed the Court to any evidence that he was in custody for purposes of <u>Miranda</u> before he made the inculpatory statements cited above. <u>United States v. Beard</u>, 119 F. App'x 462, 465 (4th Cir. 2005) ("<u>Miranda</u>'s exclusionary rule only applies, however, when officers elicit admissions by questioning a suspect who is 'in custody.'" (quoting <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977))).  Nor has Turner directed the Court to any evidence that he made inculpatory statements as a product of improper coercion before being told that he was not free to leave.  Further, counsel swears that "[t]here appeared no evidence of coercion or duress related to his statement[s] from either the police reports or the comments Mr. Turner made to me." (ECF No. 62-1, at 3.)  In sum, Turner has not demonstrated that counsel performed deficiently or that he was prejudiced by counsel's failure to file a motion to suppress. Claim Three will be dismissed.

### D.  Claim Four

In Claim Four, Turner contends:

> Counsel failed to inform me that I was not indicted
> or even what an indictment was.  I was led to believe
> that I was already charged with a crime and was not aware
> that a grand jury had to be involved.  Had counsel
> informed me properly I would not have signed the
> indictment waiver since I was not formally charged.  I
> would have awaited an indictment and gone to
> trial . . . .

(ECF No. 51, at 8.)  Turner's contention that he was unaware of

the import of an indictment and that he was unwilling to waive his

right to an indictment in exchange for a guilty plea is patently

incredible in light of the sworn statements he made during his

Rule 11 Proceedings.  See United States v. Lemaster, 403 F.3d 216,

221 (4th Cir. 2005) (internal citations omitted).  During those

proceedings, before accepting Turner's Waiver of Indictment, the

Magistrate Judge fully explained to Turner his right to have a

grand jury determine probable cause by way of an indictment.  (ECF

No. 86, at 7-8.) Turner assured the Court that he understood that

right and knowingly waived it.  (Id. at 8.)  On this record, Turner

has not shown that his counsel performed deficiently or that he

was prejudiced by any alleged omission by counsel with respect to

the waiver of an indictment. See United States v. Foster, 68 F.3d

86, 88 (4th Cir. 1995) (concluding court's statements during Rule

11 proceeding cured any omission by counsel).  Claim Four will be dismissed.

### III.   CONCLUSION

Claim Two, Three, and Four will be dismissed.  Claim One will be set for an evidentiary hearing.  The Clerk will be directed to appoint counsel to represent Turner.

Counsel for the United States and appointed counsel shall arrange a telephone conference with the Court to schedule the evidentiary hearing.

The Clerk is directed to send a copy of the Memorandum Opinion to Turner and counsel for the Government.

It is so ORDERED.

/s/

_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  May  4 , 2022

16